IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH E. SUGGS,

        **Suggs,**

v.

UNITED STATES OF AMERICA,

        **Respondent.**

Case No. 3:18-CV-1533-SPM

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Before the Court is petitioner Joseph Suggs' ("Suggs") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. § 2255.

## Introduction

Following a jury trial, Suggs was convicted of multiple counts of producing and attempting to produce child pornography in violation of 18 U.S.C. § 2255(a). *United States v. Suggs,* 14-cr-30142-MJR (S.D. Ill.).[1]  The District Court sentenced him to 240 months imprisonment and ten years supervised release. On appeal, Suggs raised issues surrounding certain evidence that he believes was improperly obtained and should have been the basis of a motion to suppress. A motion that Suggs asserted should have been allowed to be filed, albeit untimely, and should have been granted.

---

[1] All documents cited to criminal case will be designated as "CR", while all documents cited to this §2255 matter will be designated as "Doc.".

The Court of Appeals found no error and determined that the District Judge reasonably exercised his discretion in declining to review the untimely motion, and, therefore, affirmed the conviction. *United States v. Suggs,* 703 Fed.Appx. 425 (2017).

Suggs now moves to vacate, set aside or correct the sentence imposed in this case (Doc. 1). For the reasons discussed below, that Petition is **DENIED.**

## PROCEDURAL BACKGROUND

On July 23, 2014, Suggs was charged by indictment with production of child pornography (CR. 1). On July 31, 2014, Suggs was arraigned on the indictment and the federal public defender's office was appointed (CR. 11, 13). On that date, the Court also established a deadline for any pretrial motions, including a motion to suppress. (CR. 14). Thus, the deadline for filing a motion to suppress was August 21, 2014, or 21 days after the arraignment. On August 1, 2016, assistant federal public defender Thomas Gabel entered his appearance. (CR. 16).

In September of 2014, Suggs filed five *pro se* motions, including two motions to suppress, but all were stricken with the Court noting that motions should be filed by counsel and the deadline for such motions had elapsed (CR. 21-28). On November 7, 2014, Suggs filed a *pro se* motion to substitute counsel (CR. 29). On November 19, 2014, a hearing was held on said motion, with Suggs, his attorney Tom Gabel, and the Federal Public Defender Phil Kavanaugh in attendance (CR. 31). Gabel advised that Suggs had requested he file some motions, but he refused after advising Suggs he did not feel they had any merit (CR. 155 at 3). Gabel also indicated that Suggs did not accept his judgment on that issue (*Id.*). At the hearing, the Court advised Suggs of his absolute rights, but indicated the attorney had the

right to determine the tactics used in the case and that he did not have to follow Suggs' advice (*Id.* at 4). The Court emphasized that an attorney has an ethical obligation to not file motions without a basis in law or fact (*Id.*). Kavanaugh agreed that he would conduct an independent file review of this case, but stated that in his professional opinion, a motion to suppress would be "frivolous" (*Id.* at 16).  The Court denied the motion for substitution of counsel. (*Id.* at 16). No pretrial motions or motions to seek leave to reopen or extend the filing deadline were made following that hearing.

On January 20, 2015, the Court received another *pro se* filing, which was returned undocketed per prior admonishments (CR. 34). On February 4, 2015, less than two months after prior hearing, Gabel moved to withdraw after being advised Suggs had filed a complaint against him with the office of chief disciplinary counsel (CR. 36). On that same date, the Court granted said motion and appointed CJA attorney, Michael Ghidina, and advised Suggs that the change in counsel would most likely result in trial continuance (CR. 37). On February 18, 2015, a motion to continue was filed, and on February 23, 2015, the trial was continued from March 2015 to June 8, 2015 (CR. 38, 39). On May 13, 2015, another motion for continuance was filed (CR. 40). On May 14, 2015, the Court continued the jury trial to August 31, 2015 and scheduled the final pretrial conference was July 29, 2015 (CR 41).

On July 7, 2015, Ghidina filed another motion to continue, along with a motion for leave to file a motion to suppress (CR. 44). The government objected to the allowance of the motion to suppress, and the Court agreed, entering an Order denying leave to continue and striking the motion because no good cause had been

shown to allow the late filing and because the record was "devoid of any basis on which to permit the filing of a suppression motion nearly eleven months past the deadline." *(CR. 48, 48)*. On July 29, 2015, a final pretrial conference and jury instruction conference was held (CR. 49). On July 30, 2015, the Court entered an Order regarding pretrial deadlines including motions in limine, voir dire questions, exhibit lists, a joint witness list and a joint statement of the case (CR. 50).

On August 18, 2015, a notice of hearing for change of plea was set on August 19, 2015 (CR. 56). However, at the change of plea hearing, Suggs requested it ne continued (CR. 57). On August 20, 2015, Ghidina filed another motion to continue as well as a motion for psychiatric exam and motion for Order of competency to stand trial (CR. 58, 59). In response thereto, the Court entered an Order for examination and reset the trial to November 16, 2015 (CR. 60). On October 6, 2015, the Court extended the evaluation period because the evaluation was set for December 5, 2015 (CR. 62). Consequently, the Court also continued the jury trial to January 19, 2016 *(Id)*.

On December 18, 2015, the Court held a competency hearing and took judicial notice of the report (CR. 65). An Order was entered declaring Suggs competent to proceed, verifying the trial date of January 19, 2016 (CR. 66). On December 30, 2015, the jury trial was moved to January 11, 2016 due to a conflict (CR. 70).

On January 5, 2016, a federal grand jury returned a superseding indictment, adding another count of production of child pornography and a count of attempted production of child pornography, all relating to conduct on June 7, 2014 (CR. 71).On

January 9, 2016, the trial was continued to April 25, 2016, with the consent of Suggs, in part due to the superseding indictment (CR. 76).

On February 5, 2016, Suggs filed a *pro se* motion for substitution of counsel, which was set for hearing on February 24, 2016 (CR. 78, 79). At the hearing, the Court denied Suggs' motion and ordered Ghidina to remain on the case (CR. 80). On March 7, 2016, Suggs filed *pro se* requests for official speedy trial status/classification, "filed" documents and a notice of appeal, all of which were denied because he was represented (CR. 81-84).

On April 5, 2016, Ghidina sought leave to withdraw, claiming that since the prior hearing on February 24, 2016, Suggs has filed numerous *pro se* filings and is at odds with his attorney and not following his advice (CR. 85). Ghidina indicated that he felt some of Suggs' conduct was fraudulent, and that Suggs advised him he planned to file a complaint against him with the IARDC (*Id.*).

On April 15, 2016, a hearing was held on said motion wherein Ghidina reiterated his concerns about representing Suggs and the rules of professional responsibility (CR. 146, pp. 3-7). The Court denied the motion, stating that Suggs had not yet reported Ghidina to the IARDC and that he just did not want to go to trial (*Id.* at 10). As of the hearing date, Suggs has had seven (7) continuances and has been incarcerated for 624 days (*Id.*). Suggs had previously been represented by Gabel, a competent, qualified and professional federal defender and was then represented by Ghidina, another competent, professional and capable panel attorney (*Id.*). Young victims were awaiting trial, and although it was going to be difficult, Ghidina needed to remain professional and do the best he could (*Id.* at 11).

In the Court's opinion, no one would satiate Suggs, and this case was going to trial on April 25th (*Id.*). The Court found the communication breakdown was attributable to Suggs, not Ghidina so the Court advised Suggs to work with Ghidina and admonished him to stop writing frivolous letters and complaints (*Id.* at 13).

On April 26, 2016, following a two-day jury trial, Suggs was found guilty on all three counts alleged in the superseding indictment (CR. 90). On September 8, 2016, the Court conducted a sentencing hearing after a Presentence Investigation Report ("PSR") was prepared and filed (CR. 132). At that time, the Court sentenced Suggs to a term of 240 months' imprisonment on each count to run concurrently, a $300 fine, a term of 10 years' supervised release, and a $300 special assessment. R. 132. Judgment was entered by the Court on September 14, 2016 (R. 135).

On September 14, 2016, Suggs timely filed a notice of appeal (R. 138). On August 22, 2017, the Seventh Circuit affirmed the convictions and sentence. See *United States v. Suggs*, 703 Fed. Appx. 425 (7th Cir. 2017).

On August 24, 2018, Suggs filed his motion to vacate, set aside or correct sentence (Doc. 1). On April 1, 2019, the government filed its response, along with 6 exhibits supporting their argument (Doc. 20). On May 8, 2019, Suggs filed a reply to the government's response (Doc. 21). On December 28, 2020, Suggs filed a motion for evidentiary hearing, a motion to copy and a motion to appoint counsel (Doc. 24).

## FACTUAL BACKGROUND

On June 7, 2014, Belleville Police Department responded to the 100 block of South 44th Street in Belleville, which is adjacent to Citizen's Park for a call regarding "some juveniles messing around in an abandoned house" (CR. 147 at pp.

17-18). Upon arrival, officers observed two juveniles, M.W. and T.G., as well as Suggs, but no one else was in area (*Id*.). Suggs was standing outside his vehicle holding a camera, and when asked, responded that he was "taking pictures of the juveniles in different settings and stuff" (*Id*.). The officer engaged in "small talk" with Suggs, who advised that he had a photography business (*Id*.). Suggs claimed that he knew the kids, initially stating that he knew their fathers and from the neighborhood (*Id*.). After a records check, the officers discerned that Suggs had an Alorton address and asked him if he knew the kids from a neighborhood in Alorton. (*Id*.). Suggs indicated he was employed at McDonald's in Belleville and knew them from there (CR. 147 pp. 19-20).

While one officer spoke with Suggs, another spoke with the juveniles who advised that Suggs had approached them at Bellevue Park in Belleville and asked to take pictures of them in exchange for money (*Id*.). Suggs then drove the two juveniles to the area where officers located them and took photographs of them. (*Id*.). One of the juveniles said it was not the first time that Suggs had asked if he could take photographs of him which he refused at that time (*Id*.).

The officers thought this was "suspicious" and asked Suggs to look at the photographs of the juveniles (CR. 147 at p. 22). Suggs consented and produced his camera and even showed the officers how to scroll through the pictures (*Id*.). The photographs "initially they started off normal… and then there were pictures where the juveniles had their pants pulled down their legs, boxer shorts still on" (*Id*.). In one of the photos, the juveniles had their pants pulled "down to their lower legs (with boxer shorts still on) bent over with their butts facing the camera" (*Id*.).

One of the pictures showed the juveniles with their shorts pulled down below their pubic area and "you could see the bulge" (CR. 147 at p. 22).

After consultation with his chain of command, Suggs was arrested for violating Belleville's local disorderly conduct ordinance and the camera was secured as evidence (*Id*. at p. 23). Suggs was arrested with disorderly conduct and his camera was taken in to evidence (*Id*.).

Detective with the Belleville Police Department then applied for and received a search warrant in the Circuit Court of St. Clair County for the memory card that was contained in the camera as well as an additional memory card that had been located in Suggs's pocket during a search incident to arrest (CR. 147 at pp. 28, 48-49). Ultimately, a forensic review of the two memory cards was conducted by a detective with the O'Fallon, Illinois police department who serves on the United States Secret Service Cybercrime Task Force; around 200 "illicit" photographs of M.W. were located, including photographs of M.W. exposing his penis in front of a statue located at Bellevue Park named "Angel of Hope" as well as seated in a Cadillac (CR. 147 at pp. 108, 110, 119-123). In some of the photographs, a hand not belonging to M.W. is holding his penis (CR. 147 at 121).

M.W. and T.G. – the two juveniles – testified at trial. M.W. stated that on June 7, 2014, he was on his way to a park when Suggs pulled up to him in a brown Cadillac, told him that he was a photographer, and offered him money in exchange for taking pictures of him (CR. 147 pp. 82 – 84). Suggs took pictures of M.W. on a stage located within the park. *Id*. at 85. M.W. then stated that they went to a statue in the park called "Angel of Hope" and took photographs at that location (*Id*. at p.

86). M.W. then stated that they took pictures in Suggs's Cadillac (*Id*. at p. 88). Suggs specifically asked M.W. to take a "playboy pic" or a "nude pic" while M.W. sat in the passenger seat and Suggs sat in the driver's seat (*Id*. at p. 89). Suggs then took pictures of M.W.'s "private part" and grabbed M.W.'s penis while they were in the car (*Id*. at 89 – 90). M.W. got out of the car and went to his friend, T.G.'s house (*Id*.).

M.W. and T.G. both testified they went to the park near Memorial Hospital later on June 7, 2014, and Suggs approached both of them offering money in exchange for photographs (*Id*. at pp. 67 - 68, 91 – 93). Suggs drove them to Citizen's Park where he took photographs of them on some railroad tracks nearby (*Id*. at pp. 69 – 70, 94). After taking a few pictures on the railroad tracks, Suggs, M.W., and T.G., went back to Suggs's car (*Id*. at pp. 73, 96). Suggs asked M.W. if he thought T.G. would take nude pictures (*Id*. at 96). T.G. then entered Suggs's car and was asked to "take a picture with [his] panties hanging" (*Id*. at pp. 74–76, 97). Suggs grabbed T.G.'s penis over his clothing (*Id*. at 76). Shortly after T.G. got out of the car, Belleville police arrived on scene (*Id*. at pp. 77–78, 98).

## <u>SUMMARY OF PETITONER'S CLAIMS</u>

In its briefing order (Doc. 3), the Court organized Suggs's arguments into four claims:

1) Suggs was denied effective assistance of counsel pre-trial by his attorneys' failure to timely and successfully challenge Suggs' "unlawful arrest" without warrant or probable cause.

2) Suggs was denied effective assistance of counsel pre-trial by his attorneys' failure to timely and successfully challenge the search and seizure of his property (i.e., his camera, memory cards, and cell phone) in violation of the Fourth Amendment.

3) Suggs was denied effective assistance of counsel pre-trial by his attorneys' failure to "adequately investigate" cell phone records and

failure to "secure witnesses" for the defense.

4) Suggs was denied effective assistance of counsel during trial by his attorney's failure to "follow a cohesive trial strategy," by conceding Suggs' guilty due to application of the "*Dost* factors," and by failing to object to "improper bolstering by the prosecution."

## LEGAL STANDARDS

### I.     General Standards

A Court may grant relief pursuant to a § 2255 motion if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under 28 U.S.C. § 2255 is "reserved for extraordinary situations." *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006). Collateral relief is appropriate only when the error is a jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States,* 113 F.3d 704, 705 (7th Cir. 1997). Habeas relief under § 2255 is not a substitute for direct appeal. *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000). Thus, claims not raised on direct appeal are barred from collateral review unless the district court is "convinced" that failure to consider the claim "would amount to a fundamental miscarriage of justice." *Id.* at 433. Specifically, a § 2255 motion "can*not* raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* within the section

2255 Suggs demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992) (emphasis in original), *overruled on other grounds by Castellanos v. United States,* 26 F.3d 717 (7th Cir. 1994).

## II.   Ineffective Assistance of Counsel Claims

The predominant way Suggs seeks to avoid the aforementioned proscriptions is by casting his claims as ones alleging ineffective assistance of counsel which, except in limited circumstances, are not subject to dismissal based upon procedural default. *See Fuller v. United States,* 398 F.3d 644, 650 (7th Cir. 2005). Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504 (2003). In fact, the Seventh Circuit has identified § 2255 motions as a more appropriate venue than direct appeal for raising ineffective assistance of counsel claims because the opportunity to adequately develop the factual predicate for the claim" arises independent of the trial record. *Id.* (citing *Guinan v. United States*, 6 F.3d 468 (7th Cir. 1993)).

If a § 2255 motion claiming ineffective assistance of counsel survives preliminary review and is considered on its merits, a district court evaluates the claim under the two-prong *Strickland* test. *McDowell v. Kingston,* 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland v. Washington,* 466 U.S. 668, 694 (1984)). There is a heavy burden of proof on a defendant asserting an ineffective assistance of counsel claim. *Harris v. Reed,* 894 F.2d 871, 877 (7th Cir. 1990). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686.

Under *Strickland,* the petitioner must prove: 1) that his attorney's performance fell below an objective standard of reasonableness; and 2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell,* 497 F.3d at 761. If the Court finds *either* the performance *or* the prejudice component of the ineffective assistance claim deficient under the *Strickland* test, then there is no need to consider the sufficiency of the other component. *United States v. Slaughter,* 900 F.2d 1119, 1124 (7th Cir. 1990); *see also Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir. 1993) (a defendant's failure to satisfy either prong is fatal to his claim).

Proving that deficient performance of counsel actually prejudiced the defense requires a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Benefiel v. Davis,* 357 F.3d 655, 661 (7th Cir. 2004); *see also Williams v. Taylor,* 529 U.S. 362, 363 (2000). This test is "highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States,* 397 F.3d 564, 568 (7th Cir. 2005). In other words, Suggs must demonstrate that counsel's error actually had an adverse effect. *Strickland*, 466 U.S. at 693. However, "[n]ot every adverse consequence of counsel's choices is 'prejudice' for constitutional purposes." *United States v. Springs,* 988 F.2d 746, 749 (7th Cir. 1993). Counsel's conduct must be shown to have "so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result." *Cooper,* 378 F.3d at 642.

### III. Standards for Evidentiary Hearing in Motions Brought Pursuant to § 2255

A district court is not required to provide a hearing for every petitioner who brings a § 2255 motion. A petitioner who fails to support his § 2255 motion with "sufficient detail," or whose motion is "too speculative" is not entitled to such a hearing. *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989). "Mere unsupported allegations cannot sustain a petitioner's request for a hearing." *Id.* Instead, the § 2255 motion "must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Galbraith*, 313 F.3d at 1009. It is proper to deny a § 2255 motion without holding an evidentiary hearing if "the motion, files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." *Cooper v. United States*, 378 F. 3d 638, 641- 41 (7th Cir. 2004).

### ANALYSIS

Suggs claims that his Fourth Amendment rights were violated on the basis of an unlawful arrest without a warrant or probable cause, and both of his attorneys were deficient by not filing a motion to suppress (Doc. 1). Suggs cannot satisfy either prong of *Strickland* with respect to this claim.

When a claim of ineffective assistance of counsel is predicated on counsel's failure to file a motion to suppress, the prejudice prong of *Strickland* requires that the defendant prove that the motion would have been granted. *United States v.*

*Cieslowski*, 410 F. 3d 353, 360 (7th Cir. 2005). See also *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious"). Failure to raise a losing argument or file a futile motion to suppress does not constitute ineffective assistance of counsel. *Perez v. United States*, 286 F. App'x 328, 331-332 (7th Cir.  2008).

Suggs cannot prove that his motion to suppress would have been granted as there was no Fourth Amendment violation with respect to his initial arrest for disorderly conduct. When police arrived in the area of the 100 block of South 44th Street for a call of "juveniles messing around in an abandoned house," the only individuals in the area were the two juveniles, M.W. and T.G., and Suggs. Police appropriately engaged in a consensual conversation with Suggs, while a second officer approached the juveniles to see what was going on. Suggs admitted that he was taking photographs of the juveniles and Suggs claimed he had a photography business. He said he knew the juveniles' fathers, then said that he worked at McDonald's and knew the juveniles from his employment. The juveniles advised Suggs offered them money to take pictures of them and drove them to a second park.

At trial, the officer characterized his conversation with Suggs as "small talk" (CR. 147 at p. 19). He recalled Suggs's conduct appeared "suspicious". Suggs gave voluntary consent for the officers to view the photographs on his camera and even helped them access the older photographs. The officers saw photographs of the two

juveniles with their shorts pulled down exposing their boxer shorts and bent over

"with their butts facing the camera" in addition to photographs of the juveniles

standing to the side where "you could see the bulge" (CR. 147 at p. 22). Suggs was

then placed under arrest for violating Belleville's disorderly conduct ordinance, 30-

1-2, which provides in relevant part:

> "A person commits disorderly conduct when he knowingly:
>
>> (F)  Does any act which will disturb the public peace and quiet
>> or is likely to provoke a breach of the peace

In 2014, the penalty for violating the disorderly conduct ordinance was

governed by Belleville ordinance 1.09, which states in relevant part: "… any person

by any provision of this Code is guilty of a misdemeanor and shall, upon conviction,

be fined not less than $50, nor more than $1,000."   In *Atwater v. City of Lago Vista*,

the United States Supreme Court upheld warrantless arrests for minor criminal

offenses which are punishable only by a fine as permissible. 121 S. Ct. 1536, 1541

(2001).

"Breach of the peace" is not defined in the Belleville Code of Ordinances;

however, the Seventh Circuit has observed that the offense of disorderly conduct has

been around for a long time, even though it is not well-defined. *Sroga v. Weiglen*, 649

F. 3d 604, 606 (7th Cir.  2011). In the context of Illinois' disorderly conduct statute,

which also uses the phrase "breach of the peace," an Illinois Appellate Court has

stated,

> "Lewd conduct may constitute disorderly conduct depending on the
> surrounding circumstances. One relevant circumstance is the young age
> of the victims. In determining whether conduct provokes a breach of the
> peace, it is appropriate to consider the status of the victim."

*People v. Allen*, 288 Ill. App. 3d 502, 508 (Ill. App. 4th Dist. 1997) (internal quotations and citations omitted). As such, the initial arrest of Suggs was lawful.

During Gabel's representation of Suggs, a motion hearing was held before the Honorable Judge Reagan on November 19, 2014, at which time he addressed the propriety of filing a motion to suppress in Suggs's case. After the Court noted Suggs filed a number of *pro se* motions, which included motions to suppress and motions to quash, Gabel stated:

> Mr. Gabel: "Your Honor, my client would like me to file some motions that I do not feel have merit. I have explained that to my client. My client doesn't accept my judgment on this issue, Your Honor." (CR. 155 at p. 3).

Also present at the hearing was the Federal Defender at the time, Phil Kavanaugh.

After an exchange with Suggs, the Court stated:

> The Court: "I note that the Federal Defender, Mr. Kavanaugh, is here. I am going to ask him to just put a second pair of eyes on this potential Motion to Suppress, if he hasn't done so already..." (*Id.* at pp. 10-11).

In response, Kavanaugh stated:

> Mr. Kavanaugh: "Your Honor, if it pleases the Court and Mr. Suggs, I'll conduct and independent file review of this case. I'll make sure that I give him citations of authority on the search and seizure issue because I told Mr. Gabel in my professional opinion a Motion to Suppress would be frivolous, but I will supply citations of authority to Mr. Suggs on that behalf." (*Id.* at p. 16).

The Court told Suggs:

> The Court: "...Mr. Kavanaugh is going to take a second look at the entire file and see if it merits filing a Motion to Suppress. If he thinks it is, one will be filed. If he thinks not, one will not." (*Id.* at p. 18).

Kavanaugh reiterated to Suggs:

> Mr. Kavanaugh: "... I am going to take a second look at the file and come to an independent decision about what to do"... (*Id.*).

Following the hearing on November 19, 2014, neither Gabel nor Kavanaugh moved to reopen the pre-trial motion deadline or filed any pretrial motions. The reasonable inference to be drawn from that is that both attorneys rightfully determined that any motion to suppress was meritless.

Mr. Ghidina prepared an affidavit regarding his representation of Suggs (Doc. 20-1). In it, he stated that he likewise believed that "a suppression motion lacked merit, and he was out of time to pursue it." (*Id.*). Ghidina ultimately attempted to draft one but was of the belief that "the merits were extremely weak." (*Id.*).  The Court ultimately struck that motion to suppress as untimely. (CR. 48).

The three experienced criminal defense attorneys – Mr. Gabel, Mr. Kavanaugh, and Mr. Ghidina – all came to the same correct conclusion: any motion would assuredly fail. Belleville police properly investigated a call and observed Suggs with two minors. They began a consensual encounter with Suggs, which arose suspicians, and obtained verbal consent to view the photographs and saw the aforementioned juveniles in a public setting with their shorts pulled down, boxers still on, standing to the side where "you could see the bulge" in addition to photographs of the juveniles with their pants pulled down to their lower legs "bent over with their butts facing the camera." (CR. 147 at p. 22). The conduct comported with Belleville's disorderly conduct ordinance as photographing two juveniles in a state of partial undress in a public setting is conduct that is likely to provoke a breach of the peace and disturb the public peace and quiet. Thus, there was ample probable cause for Suggs's warrantless arrest.

Without explicitly saying so, the Court likewise assessed that there was no issue with the initial arrest in this case. At a motion hearing on February 24, 2016, regarding Suggs's second motion for new trial counsel, Suggs reiterated to the Court his belief that his constitutional rights were violated (CR. 145 at pp. 7, 17-18). The Court told Suggs that Mr. Ghidina "…can't file something frivolous. If he does, he gets sanctioned by me. I assure you, he has been in front of me many times. He knows if there is a valid Fourth Amendment violation or not…" *Id*. at 8. The Court later offered its own summary of the events that led to Suggs's arrest:

> The Court: "… [Y]ou were arrested on June 7th for disorderly conduct after Belleville Police investigated a report of kids messin' around in a vacant house on South 44th Street. Officers Nowak and Laminek [sic] arrived on the scene and saw you outside your vehicle holding a camera and they saw two male juveniles nearby. The juveniles said they were 13 and 16 years old and that you drove them from another location and paid them $20 each to photograph them. According to those officers, you allowed them to view the pictures on your camera, some of which showed the kids with their shorts down to the lower legs with boxer shorts on, bent over with their rear ends facing the camera. Other pictures had shorts pulled down, boxers still on, kids standing sideways.
>
> You were arrested for disorderly conduct and searched as being processed and booked. A four-gig micro memory card taken from your pocket, 16-gig taken from the camera. You were charged by way of Criminal Complaint in State Court. Search warrants were executed on your residence and computers and a forensic analysis was done on the memory cards. The State case was dismissed when the Federal Indictment was filed.
>
> That is what Mr. Ghidina has in the discovery. That is what I have gleaned your case is about according to the officer's reports.
>
> Is there anything else you want to say about the request for me to excuse Mr. Ghidina, because I haven't heard anything that gets you there so far. You don't like what he was doing, you don't like that you were arrested, you don't like the charge…" (CR. 145 at pp. 19-20).

Clearly, the Court believed that any motion to suppress with respect to Suggs's arrest would be meritless.

A district court's review of attorney performance is "highly deferential" assuming that "counsel's conduct falls within the wide range of reasonable professional assistance." *Holman*, at 840. Because Gabel and Ghidina's conduct fell within the wide range of reasonable professional assistance, Suggs fails to meet *Strickland's* first prong. Additionally, Suggs cannot meet *Strickland's* second prong, as he cannot show that a motion to suppress based upon an unlawful arrest would have been meritorious; thus, his claim that his attorneys were ineffective on this ground fails.

Suggs also claims that his attorneys were ineffective for not filing a motion to suppress the seizure and search of his property – specifically his camera and memory cards. This claim is also meritless as he voluntarily provided it to the officer.

As noted above, officers first observed photographs on Suggs's phone pursuant to voluntary consent provided by Suggs. Officers then seized the camera as evidence pursuant to his arrest for disorderly conduct (CR. 147 at pp. 27-28). During a search incident to arrest, a separate memory card was located in Suggs' pocket (*Id*. at p. 28). Both items were logged in to evidence (*Id*. at p. 35). A search warrant was then obtained for the memory card contained within the camera, as well as the separate memory card found in Suggs's pocket, the search warrant having been authorized by a Circuit Court Judge in St. Clair County (*Id.*). A search of the memory cards revealed approximately 200 illicit images of M.W.,

including photographs of his penis (CR. 147 at pp. 118-119, 121).

A well-recognized exception to the warrant requirement is when someone consents to a search. *United States v. Jackson*, 598 F. 3d 340, 346 (7th Cir. 2010). Law enforcement may seize items without a warrant if they have probable cause to believe those items are linked to criminal activity. *United States v. Bruce*, 109 F. 3d 323, 328 (7th Cir. 1997). Where Suggs consented to viewing photographs on his camera and officers observed photographs in plain view that showed Suggs engaged in conduct that violated Belleville's disorderly conduct ordinance, the initial search and seizure of Suggs's camera did not violate the Fourth Amendment.

Another well-rooted exception to the warrant requirement is a search incident to arrest. Police can conduct a warrantless search of an arrestee even if they have no reason to believe that the arrestee possesses weapon or evidence. See *New York v. Belton*, 453 U.S. 454, 461 (1981); *Virginia v. Moore*, 553 U.S. 164 (2008). After Suggs was transported to the Belleville Police Department following his arrest for disorderly conduct, an officer searched his person and located the additional memory card in his pocket, which was seized as evidence (CR. 147 at pp. 27-28). This was a proper search incident to arrest.

A complaint for search warrant to search (again) the memory card seized from the camera as well as the memory card found in Suggs's pocket was obained. In his complaint, the detective detailed the investigation to that point and submitted that he had probable cause to believe that evidence of child pornography (in addition to the already-established probable cause for disorderly conduct) would be found on the memory cards. He submitted his complaint to a neutral judge who

authorized (another) search of the memory card from the camera in addition to the memory card found in Suggs's pocket. It was during this search – a forensic examination of the memory cards – that the illicit photographs of M.W. were recovered. The search of the two memory cards pursuant to search warrant was, therefore, proper.

In the context of an ineffective assistance of counsel claim predicated on counsel's failure to file a motion to suppress, the burden is on the Suggs to demonstrate that a motion to suppress would have been meritorious. Failure to raise a losing argument or file a futile motion to suppress does not constitute ineffective assistance of counsel. *Perez*, at 331-332. Both Gabel and Ghidina made proper assessments that any motion to suppress would be meritless, and Suggs cannot show that any motion to suppress would have succeeded. Therefore, neither attorney was ineffective for failing to challenge the searches or seizure of evidence in Suggs's case.

Suggs states in his initial grounds for relief that "Counsel failed to investigate cell phone records, which would have indicated, contrary to the evidence before the jury, that movant's geographical location, was not in the area of the purported crime" (Doc. 1 at p. 2).  However, he fails to develop his argument in any meaningful way.

The allegation of failure of counsel to investigate is addressed in the affidavit of his attorney Mr. Ghidina:

> In regard to defending the case, the most effective evidence the defendant could have pursued was the individual whom Suggs advised me was the real photographer. However, Suggs refused, despite multiple requests, to

identify or provide information regarding this person. We discussed witnesses on his behalf and he offered no one (Doc. 20-1).

As hereinbefore mentioned, the memory card contained within Suggs's camera had nearly 200 illicit photographs of M.W. with the first photograph where M.W.'s penis was exposed was taken around 11:19 a.m. on June 7, 2014 – the same date Suggs was found with the minors and arrested for disorderly conduct (CR. 147 at pp. 122-123). At the time of Suggs' arrest, his vehicle, a Cadillac, was photographed, and some of the 200 illicit photographs of M.W. that were recovered had been taken in his Cadillac such that the Cadillac logo was visible (CR. 147 at pp. 121-122). M.W. testified credibly at trial that on the morning of June 7, 2014, Suggs asked him to take "playboy" pictures in exchange for money (CR. 147 at p. 88). He stated that he got in the passenger side of Suggs's Cadillac and that Suggs took photographs of his "private part" (*Id*. at pp. 67, 89).

Suggs cannot show that Mr. Ghidina was ineffective. Where a petitioner claims ineffective assistance of counsel based upon a failure to call witnesses, he must explain what testimony would have been provided by the witnesses that counsel failed to call. *Fernandez v. United States*, 197 Fed. Appx. 513, 515 (7th Cir. 2006). Suggs does not even name what witnesses he wanted counsel to call, let alone what the substance of the testimony would have been. Suggs also fails to indicate where he purportedly was at the time these photographs were taken.

Suggs fails to meet either prong of *Strickland*. Mr. Ghidina's performance fell within the objective standard for reasonableness and there was no showing of prejudice.

Suggs also asserts in his initial grounds for relief that "Counsel conceded the guilt of the movant by his use of the *Dost* factors and failed to object to improper bolstering by the prosecution" (Doc. 1 at p. 2). He fails to develop this argument whatsoever. Suggs inaccurately states that Ghidina conceded his guilt and he does not identify what he believed was "improper bolstering by the prosecution" such that Ghidina should have lodged an objection. Ghidina's affidavit, however, responds to this cursory, unsupported argument, stating:

> "We talked about theory of defense many times. I asked him what he thought and he never had an answer other than to pray, everybody was lying and he wasn't being treated fairly by the system. He agreed that focus at trial should necessarily be on the government's ability or inability to prove all elements that the jury would be required to find concerning the alleged conduct itself according to their jury instructions, including "use of the *Dost* factors" (Doc. 20-1).

Ghidina did all he could do defending Suggs at trial considering the damning evidence against him and in no way conceded Suggs's guilt. Ghidina objected numerous times to questions posed by the prosecution as well as to the introduction of certain government exhibits. *See generally* C R. 147. Ghidina cross examined witnesses regarding the character of the photographs, inconsistencies of prior statements, and custody of evidence (CR. 147 at pp. 30-33; 60-62; 79-80; 100-105). In closing arguments, Ghidina did not give up. He focused on the inconsistencies of the witnesses, the content of the photographs as it relates to the definition of "sexually explicit conduct," and the quantum of evidence proving up the interstate or foreign commerce element (CR. 148 at pp. 24-34).

Suggs' claim fails to satisfy the first prong of *Strickland*, i.e. the objective standard for reasonableness. Ghidina's trial strategy to argue that the prosecution

had not met its burden of proof on each element and calling in to question the reliability of the witness' accounts was a reasonable strategic choice by trial counsel, one that was made in consultation with Suggs and with his agreement (Doc. 20-1). Thus, the Court should presume this was a valid strategic choice by trial counsel. Additionally, because Suggs does not specify what "improper bolstering" should have been objected to, he fails to satisfy the second prong of *Strickland* – that he suffered prejudice from any alleged deficient performance.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the Court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner.

A petitioner's right to appeal a district court's denial of a Section 2255 petition is not absolute; it depends on whether the district court grants a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). A certificate of appealability is warranted only where (1) a petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Suggs has not made a substantial showing that he was denied a constitutional right. Reasonable jurists could not debate whether Suggs' counsel was ineffective. The Court, therefore, declines to issue a certificate of appealability.

## CONCLUSION

In light of the foregoing, Suggs' Motion to Vacate, Set Aside, or Correct the Sentence pursuant to § 2255 is **DENIED** and his claims are **DISMISSED** with prejudice.  All other motions are terminated as moot at this time. Given the record of the underlying criminal action where Suggs was provided with two competent attorneys, it is obvious that the Court was invested in guaranteeing that his rights were more than protected.  It also appears as if this action was frivolous and without merit as the evidence was overwhelming and Suggs' argument is wholly without merit. *Spiegel v. Continental Illinois Nat'l Bank,* 790 F.2d 638 (7th Cir. 1986). The Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

**DATED:    March 12, 2021.**


**/s/ Stephen P. McGlynn**
**STEPHEN P. McGLYNN**
**United States District Judge**